# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| My Daily Choice, Inc.,<br><br>  Plaintiff<br><br>v.<br><br>William Butler, Kristen Butler, & Arieyl, LLC,<br><br>  Defendants | Case No.: 2:20-cv-02178-JAD-NJK<br><br>**Order Scheduling Hearing Re: Motion to Dismiss and Consolidation**<br><br>[ECF No. 23] |
| My Daily Choice, Inc.,<br><br>  Plaintiff<br><br>v.<br><br>Marissa Brooke Donnell,<br><br>  Defendant | Case No.: 2:20-cv-02225-JAD-NJK<br><br>**Order Scheduling Hearing Re: Motion to Dismiss and Consolidation**<br><br>[ECF No. 13] |
| My Daily Choice, Inc.,<br><br>  Plaintiff<br><br>v.<br><br>Skylar Lambert,<br><br>  Defendant | Case No.: 2:20-cv-02228-JAD-NJK<br><br>**Order Scheduling Hearing Re: Motion to Dismiss and Consolidation**<br><br>[ECF No. 17] |
| My Daily Choice, Inc.,<br><br>  Plaintiff<br><br>v.<br><br>Danielle Lituski & Chad Lituski,<br><br>  Defendants | Case No.: 2:20-cv-02232-JAD-NJK<br><br>**Order Scheduling Hearing Re: Motion to Dismiss and Consolidation**<br><br>[ECF No. 11] |

|   |   |
|---|---|
| My Daily Choice, Inc., <br><br> Plaintiff <br><br> v. <br><br> Erin Jackson, <br><br> Defendant | Case No.: 2:20-cv-02237-JAD-NJK <br><br> **Order Granting Motion to Dismiss and Closing Case** <br><br> [ECF No. 5] |

My Daily Choice, Inc. filed five separate lawsuits against its former affiliates William and Kristen Butler, Marissa Donnell, Skylar Lambert, Danielle and Chad Lituski, and Erin Jackson for breach of contract, copyright infringement, tortious interference, and fraud, alleging that they unlawfully launched a competing company, defendant Arieyl, LLC.[1] Arieyl, the Butlers, Donnell, Lambert, and the Lituskis argue that this court lacks personal jurisdiction over them because they have no contacts with Nevada and their contracts with My Daily Choice, which contain identical Nevada forum-selection clauses, are unenforceable because they were imposed under economic duress.[2] Jackson separately moves to dismiss for lack of subject-matter jurisdiction, presenting evidence that the company cannot exceed the $75,000 statutory minimum to maintain federal diversity jurisdiction over the suit against her.[3] I find that this court lacks subject-matter jurisdiction over Jackson, but that factual disputes remain about whether the forum-selection clause was the product of unfair pressure. I also find that this matter may be

---

[1] *My Daily Choice v. Butler*, case no. 2:20-cv-02178 (*Butler*), ECF No. 1 (complaint); *My Daily Choice v. Donnell*, case no. 2:20-cv-02225 (*Donnell*), ECF No. 1 (complaint); *My Daily Choice v. Lambert*, case no. 2:20-cv-02228 (*Lambert*), ECF No. 1 (complaint); *My Daily Choice v. Lituski*, case no. 2:20-cv-02232 (*Lituski*), ECF No. 1 (complaint); *My Daily Choice v. Jackson*, case no.: 2:20-cv-02237 (*Jackson*), ECF No. 1 (complaint). Allegations or arguments applicable to all parties are identified by reference to the documents filed in *Butler*.

[2] *Butler*, ECF No. 23 (motion to dismiss); *Donnell*, ECF No. 13 (motion to dismiss); *Lambert*, ECF No. 17 (motion to dismiss); *Lituski*, ECF No. 11 (motion to dismiss).

[3] *Jackson*, ECF No. 5 (motion to dismiss).

facilitated by consolidation (given that My Daily Choice's claims and allegations are largely identical for each defendant), but it is unclear whether consolidation may pose issues of convenience or prejudice. So I grant Jackson's motion and dismiss the suit against her, and I order My Daily Choice and the remaining defendants to appear for a hearing about economic duress and consolidation.

## Background[4]

My Daily Choice is a direct-sales company that relies on independent affiliates to market and sell its hemp-based products.[5] Pyramidal in structure, the company's affiliates earn revenue by selling merchandise, and they aspire to manage a team of "downline" recruits from whom they may take a percentage of sales profits.[6] According to the company, this compensation plan is unique and subject to copyright.[7] To become an affiliate, My Daily Choice requires its users to complete an affiliate application and agreement, which incorporates a variety of policies and procedures outlining the company's terms and conditions. These conditions include: (1) a prohibition on cross-recruiting, which disallows managing affiliates to poach downline affiliates already involved with My Daily Choice; (2) various non-compete provisions, prohibiting the sale of competing products or affiliation with competing programs; (3) non-disparagement; and (4) in the case of a terminated relationship, a year-long prohibition on the use of social-media pages used to promote or sell My Daily Choice's products.[8]

---

[4] Aside from jurisdictional facts provided by the parties, this is merely a summary of the complaints' allegations and should not be construed as findings of fact.
[5] *Butler*, ECF No. 1 at ¶¶ 7–8.
[6] *Id.* at ¶ 8.
[7] *Id.* at ¶¶ 16, 20–22.
[8] *Id.* at ¶¶ 11–15.

My Daily Choice's terms also have modification, choice-of-law, and forum-selection clauses. From November 2014 to October 2018, My Daily Choice specified that its terms and conditions would be "construed in accordance with the laws of the State of Texas" and that "[a]ny controversy or claim arising out of or relating to the business relationships" between the company and its affiliates "shall be resolved by mandatory, final, binding[,] nonappealable [sic] arbitration in Dallas, Texas, United States of America."[9] That 2014 agreement contained a broad modification clause, reserving the company's "right to make any modifications" to the terms, "provided that the modifications are communicated" to affiliates "at least thirty [] days prior to taking effect."[10] In 2018, My Daily Choice altered these provisions. Among other things, it rendered its modification provision more circumspect, specifying that "[a]mendments shall not apply retroactively."[11] And it noted that "[j]urisdiction and venue of any matter not subject to arbitration shall reside exclusively in Clark County, State of Nevada."[12]

The Butlers, Donnell, Lambert, and the Lituskis became affiliates with My Daily Choice under the 2014 agreement, and Jackson joined when the 2018 agreement was in place.[13] But even the 2014-agreement affiliates consented to be bound by the 2018 agreement through a popup window on My Daily Choice's website.[14] That popup notified the defendants of new disclaimers for the program; provided a hyperlink for the company's policies and procedures;

---

[9] *Butler*, ECF Nos. 23 at 4; 23-1 at 24.

[10] *Butler*, ECF No. 23-5 at 19.

[11] *Butler*, ECF No. 23-6 at 8.

[12] *Id.* at 52.

[13] *Butler*, ECF No. 24-1 at ¶ 10; *Donnell*, ECF No. 15-1 at ¶ 8; *Lambert*, ECF No. 18-1 at ¶ 8; *Lituski*, ECF No. 12-1 at ¶ 3; *Jackson*, ECF No. 5 at 2.

[14] *Butler*, ECF No. 24-1 at ¶ 12–14; *Donnell*, ECF No. 15-1 at ¶ 10; *Lambert*, ECF No. 18-1 at ¶ 10; *Lituski*, ECF No. 12-1 at ¶ 10; *Jackson*, ECF No. 5 at 2.

and, in a blue box with white text directly beneath that hyperlink, required users to click a button acknowledging that they "[u]nderstand and [a]gree to these [p]olicies and [p]rocedures."[15] The popup did not block affiliates from accessing their accounts; even if affiliates ignored the popup or failed to agree to the terms and conditions, they could still use their accounts and would continue to receive payments from My Daily Choice for their direct sales.[16] But the parties dispute whether the popup impeded managing affiliates' ability to receive a percentage of their downline affiliates' sales—revenue that ostensibly could be recouped for years.

Despite having profitable relationships with My Daily Choice, the defendants decided to sever ties with the company and start their own venture.[17] In 2020, the Butlers formed Arieyl, a competing direct-sales company that marketed products resembling those produced by My Daily Choice.[18] They started with a 25-person team, which included former My Daily Choice affiliates Donnell, Lambert, Jackson, and the Lituskis, and they all promoted Arieyl on social-media pages that they had previously dedicated to selling My Daily Choice's merchandise.[19] The Butlers also used My Daily Choice's compensation structure as source material for their own business.[20] So My Daily Choice sued the defendants in this court. It asserts that all defendants breached their agreements with the company and committed tortious interference with their contracts, while

---

[15] *Butler*, ECF No. 24-6 at 2.

[16] *Butler*, ECF No. 24-10 at ¶¶ 5–6.

[17] *Butler*, ECF No. 1 at ¶¶ 27, 33; *Donnell*, ECF No. 1 at ¶ 16; *Lambert*, ECF No. 1 at ¶ 16; *Lituski*, ECF No. 1 at ¶ 19; *Jackson*, ECF No. 1 at ¶ 16.

[18] *Butler*, ECF No. 1 at ¶¶ 27-28.

[19] *Id.* at ¶¶ 28–29, 31, 34, 35; *Donnell*, ECF No. 1 at ¶¶ 14, 18; *Lambert*, ECF No. 1 at ¶¶ 16, 18, 25; *Lituski*, ECF No. 1 at ¶¶ 20–23; *Jackson*, ECF No. 1 at ¶¶ 17–20.

[20] *Butler*, ECF No. 1 at ¶¶ 36–39.

separately alleging that the Butlers infringed on My Daily Choice's copyright under 17 U.S.C. § 501 and that Lambert committed fraud.

## Discussion

### I. Subject-matter jurisdiction over the claims against Jackson

"Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."[21] District courts have limited, original jurisdictional over all civil actions: (1) "arising under the Constitution, laws, or treaties of the United States;"[22] and (2) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[23] When a defendant challenges subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court will construe her motion as either "factual" or "facial."[24] A factual challenge argues that the facts in the case, notwithstanding the allegations in the complaint, divest the court of subject-matter jurisdiction.[25] A facial challenge attacks the sufficiency of the allegations and mirrors a Rule 12(b)(6) motion to dismiss, which requires courts to take all allegations contained in the pleading as true and to "draw all reasonable inference in [plaintiff's] favor."[26] Generally, a plaintiff bears the burden of proving that subject-matter jurisdiction exists.[27]

---

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[Courts] have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

[22] 28 U.S.C. § 1331.

[23] *Id.* § 1332(a)(1).

[24] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[25] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[26] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

[27] *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

Jackson's Rule 12(b)(1) motion lodges both facial and factual challenges, arguing that while the parties are diverse, My Daily Choice seeks disgorgement of previous commissions and bonuses paid to Jackson, which amount to damages well below the statutory threshold.[28]  The company asserts that its projected losses will eventually exceed $75,000 and seeks jurisdictional discovery to uncover Jackson's alleged misdeeds.[29]  Generally, "[t]he amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith."[30]  "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."[31]

My Daily Choice fails to allege damages exceeding $75,000.  While the amount in controversy "is simply an estimate of the total amount in dispute,"[32] should a defendant present extra-pleading materials contradicting the substance of a complaint's jurisdictional allegations, a plaintiff must present "affidavits or any other evidence necessary to satisfy its burden of establishing" subject-matter jurisdiction.[33]  Despite implying that it might be owed lost profits in its response, My Daily Choice neither argues that its substantive claims justify such an award nor

---

[28] *Jackson*, ECF No. 5 at 4.

[29] *Jackson*, ECF No. 7 at 3–4.

[30] *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010).

[31] *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000) (internal quotation marks omitted); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

[32] *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (internal quotations and citations omitted).

[33] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1026 n.2 (9th Cir. 2001) ("*St. Clair* held that a plaintiff bears this burden of production *after* a defendant challenges the facts underlying the jurisdictional allegations in a complaint based on evidence outside the pleadings.  Only at that point does the burden shift to the plaintiff to produce extrinsic evidence.").

does it concretely identify what those lost profits might be. Its complaint explicitly seeks only the "recovery of [My Daily Choice] commissions and bonuses paid to Jackson during the course of her unlawful conduct," "actual damages," and disgorgement of "profits and gains derived as a result of the unlawful acts."[34] Jackson has liberally tallied those damages, which account for less than $50,000—a number My Daily Choice does not dispute. The company also provides no articulated basis for what, exactly, jurisdictional discovery might uncover about its damages.[35] Given that Jackson has demonstrated that, at most, My Daily Choice's claim is for less than the jurisdictional amount, and the company has failed to rebut that evidence, I find that this court lacks subject-matter jurisdiction over the company's claims against Jackson and that jurisdictional discovery would be fruitless. So I dismiss the suit against Jackson without prejudice and without leave to amend.

## II. Personal jurisdiction over Arieyl, the Butlers, Donnell, Lambert, and the Lituskis

A district court may dismiss an action under Federal Rules 12(b)(2) and (3) for lack of personal jurisdiction or improper venue. The Fourteenth Amendment limits a forum state's power "to bind [] nonresident defendants," like those here, "to a judgment of its courts."[36] To determine its jurisdictional reach, the court applies the forum state's laws to determine personal jurisdiction, bearing in mind that the exercise of jurisdiction must comport with the requirements of due process under the United States Constitution.[37] The jurisdictional analyses under state

---

[34] *Jackson*, ECF No. 1 at ¶¶ 33–37.

[35] *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("Where a [p]laintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery.").

[36] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[37] *Id.*

law and federal due process are identical in Nevada,[38] requiring "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[39] "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."[40] While courts must take "uncontroverted allegations in the complaint" as true, resolving conflicts in the plaintiff's favor, "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction.'"[41]

### A. This court lacks specific personal jurisdiction over the defendants.

My Daily Choice does not claim that general jurisdiction exists in this court[42] and only half-heartedly urges the exercise of specific jurisdiction over Arieyl, the Butlers, Donnell, Lambert, and the Lituskis, arguing that they "engaged in a deliberate attempt to cause harm in the forum and individually target[ed]" the company in Nevada.[43] A court may exercise specific jurisdiction over a defendant if the cause of action "arises out of" or has a substantial connection to the defendant's contacts with the forum.[44] "The inquiry whether a forum State may assert

---

[38] *Id.*; Nev. Rev. Stat. § 14.065.

[39] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[40] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

[41] *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

[42] Because My Daily Choice concedes that general jurisdiction does not exist in this court, I consider only whether this court may exercise specific jurisdiction over the defendants.

[43] *See, e.g.*, *Butler*, ECF No. 24 at 15.

[44] *Hanson v. Denckla*, 357 U.S. 235, 250–53 (1958); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction, on the other hand, depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.") (alteration in original).

specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'"[45] In the Ninth Circuit, three requirements must be met for a court to exercise specific jurisdiction over a nonresident defendant: "(1) the non-resident defendant must" "perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws"; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable."[46] The plaintiff bears the burden of satisfying the first two prongs; if it does so, the burden then shifts to the defendants to set forth a "compelling case" that the exercise of jurisdiction is unreasonable.[47]

     My Daily Choice has failed to demonstrate that the defendants purposefully availed themselves of the benefits of doing business in Nevada[48] or that its claims arise out of or relate to the defendants' forum-related activities. "[T]he plaintiff cannot be the only link between the defendant and the forum."[49] The Ninth Circuit has long held that "a contract alone does not automatically establish minimum contacts,"[50] and the foreseeability of causing harm in the forum state, without more, is insufficient for purposeful availment.[51] As the Supreme Court

---

[45] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

[46] *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).

[47] *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (internal quotation marks omitted).

[48] Because this dispute sounds in contract, I apply the purposeful-availment analysis. *Schwarzenegger*, 374 F.3d at 802.

[49] *Walden*, 571 U.S. at 285 (citing *Burger King Corp.*, 471 U.S. at 478)).

[50] *Boschetto*, 539 F.3d at 1017.

[51] *Holland Am. Line, Inc.*, 485 F.3d at 459.

clarified in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, to satisfy the second prong of the specific-jurisdiction analysis, "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[52]  Under the clear terms of the 2014 agreement, the parties negotiated their initial contract in Texas, and there are no allegations that any of the defendants—each of whom reside in, operate out of, or are incorporated in Florida or Pennsylvania[53]—acted in such a way as to reach Nevada.  My Daily Choice does not allege that Arieyl targets Nevada customers, much less indicate how the defendants have directed their conduct to the state or sought its protections and benefits.  The company's complaints, in fact, reveal that the only connection to Nevada is its own operation in the state.  So I decline to exercise specific jurisdiction over Arieyl, the Butlers, Donnell, Lambert, or the Lituskis.

### B. Enforcement of the forum-selection clause

Conceding that they've agreed to a forum-selection clause that governs this dispute,[54] Arieyl, the Butlers, Donnell, Lambert, and the Lituskis challenge whether that clause—which My Daily Choice changed from designating Texas to Nevada in a unilateral 2018 update to the parties' agreement—is enforceable, such as to grant this court personal jurisdiction over them.  A

---

[52] *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017).

[53] *Butler*, ECF No. 1 at ¶¶ 4–6; *Donnell*, ECF No. 1 at ¶ 4; *Lambert*, ECF No. 1 at ¶ 4; *Lituski*, ECF No. 1 at ¶¶ 4–5.

[54] The parties appear to agree on this point, despite the updated 2018 terms stating that "any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration.  The [p]arties waive all rights to trial by jury or to any court." *Butler*, ECF No. 23-6 at 50–51.  The defendants have not sought to enforce this arbitration provision.

defendant may consent to personal jurisdiction by agreeing to a forum-selection clause.[55] Federal law governs the scope and enforcement of forum-selection clauses.[56] The Supreme Court has established a robust "policy in favor of the enforcement of forum[-]selection clauses."[57] And a forum-selection clause is considered presumptively valid "absent a strong showing that it should be set aside."[58] The Ninth Circuit, drawing on the Supreme Court's decision in *MS Bremen v. Zapata Off-Shore Co.*, has identified four scenarios that might overcome this presumption of enforceability: (1) when enforcement would be unreasonable or unjust; (2) when the clause is a "product of fraud or overreaching," (3) when "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced," or (4) when enforcement would violate a "strong public policy" of the forum state.[59] The defendants argue that the 2018 agreement should be set aside under the first two scenarios.

---

[55] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) ("[U]nder general contract principles, a forum[-]selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound.").

[56] *Manetti-Farro, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). In resolving a motion to dismiss under Federal Rule 12(b)(2) and (3), a court may "consider facts outside the pleadings." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). Parties on both sides of the aisle ask me to consider both the 2014 and 2018 agreements.

[57] *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) ("[Such clauses] should be given controlling weight in all but the most exceptional cases.").

[58] *MS Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("There are compelling reasons why a freely negotiated private internal agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect."); *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 914 (9th Cir. 2019).

[59] *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (internal quotation marks and citations omitted); *see also Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013).

### 1.   *The 2018 agreement is neither unreasonable nor unjust.*

The defendants assert that enforcement of the 2018 agreement would be unjust because they lacked sufficient notice of the terms, failed to read them, and because the agreement was unilaterally imposed upon them and contains unconscionable provisions. The principles of contract still apply to commerce conducted on the Internet.[60] Online agreements, like My Daily Choice's, generally come in three varieties: browsewrap, clickwrap, and hybrid.[61] Browsewrap agreements, which are infrequently enforced, do not require a user "to manifest assent to the terms and conditions expressly;" the mere act of "using the website" is taken as consent.[62] Clickwrap agreements, which are often enforced, require a user to "click on an 'I agree' box after being presented with a list of terms and conditions of use."[63] Hybrid agreements meld aspects of both, often "notif[ying] the user of the existence of the website's terms of use" via a hyperlink, requiring a user to click "I agree," or merely "advis[ing] the user that he or she is agreeing to the terms of service when registering or signing up" with the company.[64] The enforceability of each

---

[60] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

[61] *Id.*

[62] *Id.* at 1175–76.

[63] *Id.*; *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012) (noting that a "pure-form clickwrap agreement" contains a "mechanism that forces the user to actually examine the terms before assenting.").

[64] *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–76 (2d Cir. 2017); *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585–86 (N.D. Cal. 2020) (noting this hybrid approach and finding that an arbitration agreement was enforceable).

13

type of agreement turns on whether a user had actual or constructive notice of the terms, sufficient to demonstrate mutual assent to its conditions.[65]

My Daily Choice's 2018 agreement is an enforceable, hybrid agreement. Courts throughout this circuit have consistently enforced agreements presented to users as clear, hyperlinked terms located near a required "I agree" button, despite the agreement being imposed unilaterally on the user and the user not actually reading the terms.[66] For example, in *Rodriguez v. Experian Services Corp.*, the court enforced an arbitration clause hyperlinked on a website, which included an express disclosure and agreement stating "[b]y clicking the button above . . . you agree to our [t]erms of [u]se."[67] So too in *Crawford v. Beachbody, LLC*, where a judge enforced a forum-selection clause contained within terms and conditions of a website when, at the final page of placing an order, the plaintiff click a button stating "[p]lace [o]rder," near language stating "by clicking [p]lace [o]rder below, you are agreeing" to the hyperlinked terms and conditions.[68] Like the *Rodriguez* and *Crawford* agreements, My Daily Choice's terms were presented as a clear hyperlink near an "I understand and agree to these policies and procedures" button.[69] And the undisputed evidence shows that the defendants clicked that button.[70]

Nor am I persuaded that the unilateral imposition of the 2018 agreement, which includes a modification provision, makes it illusory and unenforceable. Disparate bargaining power between parties, coupled with the inability to negotiate the agreement, is generally insufficient to

---

[65] *Nguyen*, 763 F.3d at 1175–76.

[66] *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at *8 (N.D. Cal. 2017).

[67] *Rodriguez v. Experian Serv. Corp.*, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015).

[68] *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *2–*3 (S.D. Cal. Nov. 5, 2014).

[69] *Butler*, ECF No. 24-7 at 1.

[70] *See, e.g.*, *Butler*, ECF Nos. 24-3–9.

14

invalidate a contract.[71]  And while unilateral modification provisions have been deemed substantively unconscionable in certain circumstances,[72] courts have upheld modification provisions like the one at issue here when the party has notice of the provision and any proposed modification does not operate retroactively.[73]  Regardless, the defendants have failed to explain why the inclusion of that modification provision necessarily requires rejection of the entire agreement or the forum-selection clause, as opposed to severance of the offending provision.  So I find that the 2018 agreement's forum-selection clause is neither unreasonable nor unjust and decline to set it aside on this basis.

### 2.  *It is unclear whether the clause is the product of duress.*

The defendants also hope to set aside the forum-selection clause by arguing that the entire 2018 agreement was the product of economic duress.  "[S]imply alleging that one was duped into signing the contract is not enough"; "[f]or a party to escape a forum[-]selection clause on the grounds of fraud, it must show that 'the inclusion of that clause in the contract was the product of fraud or coercion.'"[74]  Multiple courts have rejected the contention that a forum-selection clause was the product of fraud, coercion, or overreaching because the arguments went "to the contract as a whole," and not the inclusion of the clause itself.[75]  But I am not aware of a Ninth Circuit

---

[71] *Murphy*, 362 F.3d at 1141.

[72] *See, e.g.*, *In re Zappos.com, Inc. v. Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1062 (D. Nev. 2012) (invalidating modification provision contained in browsewrap agreement that affected both pending and anticipated suits); *Crawford*, 2014 WL 6606563, at *3.

[73] *Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1176 (W.D. Wash. 2014); *Reno v. W. Cab Co.*, 2020 WL 5606897, at *3 (D. Nev. Sept. 18, 2020).

[74] *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)); *Batchelder v. Nobuhiko Kawamoto*, 147 F.3d 915, 919 (9th Cir. 1998).

[75] *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1204 (C.D. Cal. 2015); *see also S. Cal. Fleet Servs., Inc. v. ADP Dealer Servs., Inc.*, 2013 WL 1400950, at *4 (C.D. Cal. Dec. 15, 2008) ("So Cal Fleet makes no attempt to show that the clause itself was fraudulently included in the

case addressing whether a federal court may consider unconscionability of a contract as a whole under state law when the contract contains a forum-selection clause, so as to resolve a personal-jurisdiction challenge. So I provisionally consider the argument that the 2018 agreement is unconscionable under Nevada law, thus depriving this court of jurisdiction over the defendants.

Nevada law on economic duress is sparse.[76] But Nevada often looks to California for guidance on principles of contract,[77] whose courts have invalidated agreements that are the product of fraud or coercion.[78] In the Ninth Circuit, interpreting California law, "economic duress can excuse an innocent party's contractual obligations when the other contracting party does 'a wrongful act [that] is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'"[79] To establish economic duress, a plaintiff must show (1) a sufficiently coercive, wrongful act on the part of the defendant; (2) no reasonable alternative on the part of the plaintiff; (3) knowledge of the plaintiff's economic vulnerability; and (4) actual inducement to contract.[80] Courts have held that the absence of reasonable alternatives "may exist 'when the only other alternative is bankruptcy

---

agreement, and claims only that its consent to enter into the entire agreement was the product of fraud. This allegation is insufficient . . . .") (internal citation omitted); *Roberts C.R. England, Inc.*, 827 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) (dismissing plaintiff's contention because it "goes to the contract as a whole and is not specific to the forum selection clause.").

[76] *Braun v. Nevada Land, LLC*, No. 57434, 2013 WL 461254, at *2 (Nev. Feb. 5, 2013) (recognizing an economic-duress defense to contract formation) (unpublished).

[77] *Taylor v. State Indus. Ins. Sys.*, 816 P.2d 1086, 1088 (Nev. 1991).

[78] *Rich v. Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159 (1984).

[79] *Id.*

[80] *Hicks*, 897 F.3d at 1119; *Tanner v. Kaiser Found. Health Plan, Inc.*, 2016 WL 4076116, at *4 (N.D. Cal. Aug. 1, 2016).

or financial ruin,'"[81] the party demonstrates "dire economic conditions,"[82] or the enforcing party threatens termination of critical health benefits.[83]

Based on the record presented, it is unclear whether My Daily Choice coerced the defendants to approve the 2018 agreement or that the inclusion of the forum-selection clause was the product of duress. Construing factual disputes in My Daily Choice's favor, as I must, it appears that the company did not (1) make continued receipt of direct-sales revenue contingent upon agreement to the forum-selection clause or (2) limit access to the defendants' accounts.[84] But it is unclear whether the company halted payment of the defendants' downline-affiliate's sales percentages and the extent to which withholding that income might constitute a dire financial condition. This may be because the defendants raise those arguments for the first time in reply.[85] While I am inclined not to find economic duress here, I direct My Daily Choice, Arieyl, the Butlers, Donnell, Lambert, and the Lituskis to appear for an evidentiary hearing on the matter.[86] They should be prepared to (1) offer authority on whether federal law permits setting aside an unconscionable agreement under a theory of economic duress; (2) discuss whether federal law requires the defendants to exclusively challenge the coercive inclusion of the forum-selection clause, and not the entire contract; and (3) provide evidence of the extent of the company's financial coercion.

---

[81] *Hicks*, 897 F.3d at 1119 (quoting *Rich*, 157 Cal. App. at 1159).
[82] *United States v. Singulex, Inc.*, 2019 WL 1981192, at *3 (N.D. Cal. May 3, 2019).
[83] *Doe 1 v. Morrison & Foerster LLP*, 2019 WL 11806485, at *5 (N.D. Cal. May 1, 2019).
[84] *Butler*, ECF No. 24-10 at ¶¶ 4–6.
[85] *See, e.g.*, *Butler*, ECF Nos. 29; 29-1 at ¶¶ 3–5.
[86] I follow the guidance of the *Petersen v. Boeing Co.* court, which recommended holding an evidentiary hearing to resolve issues of economic duress or coercion. *Petersen*, 725 F.3d at 283.

### III.     Consolidation

Federal Rule 42(a) and this district's Local Rule 42-1(b) authorize courts to consolidate related cases, either sua sponte or upon motion, when those cases involve a common question of law or fact.  A court has broad discretion under Rule 42 when determining whether to consolidate actions pending in the same district.[87]  If the court determines that common questions are present, it must then balance the savings of time and effort that consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result.[88]  My Daily Choice's suit against these defendants all revolve around the same allegations: the Butlers enrolled the Lituskis, Donnell, Lambert, and the now-dismissed Jackson to launch Arieyl, in violation of those defendants' agreements with the company.  It also sues the defendants for largely identical claims.  There is little doubt that consolidation would greatly save time and litigation expenses.  But given that My Daily Choice seems to have separately filed these lawsuits for a reason, and no party has moved for consolidation, I order the parties to attend a hearing to discuss whether consolidation might result in unanticipated inconvenience, delay, confusion, or prejudice.

### Conclusion

IT IS THEREFORE ORDERED that Erin Jackson's motion to dismiss **[ECF No. 5] in Case No. 2:20-cv-02237 is GRANTED.**  That action is dismissed without prejudice and without leave to amend for lack of subject-matter jurisdiction.  **The Clerk of Court is directed to CLOSE that case.**

---

[87] *Inv'rs Research Co. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).
[88] *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)).

IT IS FURTHER ORDERED that My Daily Choice, Arieyl, William Butler, Kristen Butler, Marissa Donnell, Skylar Lambert, Danielle Lituski, and Chad Lituski must **appear for a hearing in Courtroom 6D of the Lloyd D. George Courthouse at 333 Las Vegas Blvd. So., at 1:30 p.m. on August 26, 2021**, prepared to discuss (1) the legal and factual issues about economic duress levied in connection with My Daily Choice's 2018 agreement and (2) consolidation of this matter.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: August 6, 2021